Nicholas **MAMULA**, Plaintiff,

v.

**UNITED STEELWORKERS OF AMERICA, an unincorporated Labor Union, and I. W. Abel, International Secretary-Treasurer thereof, Defendants.**

**Civ. A. No. 61–1.**

United States District Court
W. D. Pennsylvania.

Oct. 11, 1961.

Harry Alan Sherman, Pittsburgh, Pa., for plaintiff.

Wilner, Wilner & Kuhn, Pittsburgh, Pa., for defendants.

WILLSON, District Judge.

Plaintiff, Nicholas Mamula, is a citizen of Pennsylvania residing in Beaver County and at the time the suit was filed was President of Local Union 1211, District 20 of the United Steelworkers of America, an unincorporated labor union which is one of the defendants, the other defendant being its International Secretary-Treasurer, I. W. Abel. The jurisdiction of the court is based on the Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 519, 29 U.S.C.A. § 401 et seq. It is well to note at the outset that the case was commenced by the filing of a complaint seeking a temporary restraining order. On January 3, 1961, when the complaint was filed, there was pending an election for District Director of District 20 pursuant to the constitution of the International Union, United Steelworkers of America, last revised and adopted at the general meeting held September 23, 1960. The International Union is composed of some 38 Districts situate in the United States and Canada. The constitution provides that each District elect a District Director every 4 years and the Directors are International officers. The election was to be held on February 14, 1961.

After hearing, this court denied the temporary restraining order but without prejudice, and subsequently the case came on non-jury. The parties have been heard, evidence has been taken and counsel have submitted their briefs.

In his complaint plaintiff alleges that he was a member in good standing of Local 1211 of the defendant, United Steelworkers of America (hereinafter called Steelworkers), and that he was qualified under its constitution to be a candidate for the office of District Director of District 20. The complaint further says that the defendant Steelworkers, by the provisions of its constitution, particularly Article V, Sections 4 and 5, has chosen to permit the nomination for office of District Director by the vote of local unions within the District, requiring, however, a minimum of nominations by 5 local unions for a person to go on the District ballot. The complaint further alleges that the constitution of the defendant does not establish any procedure for the conduct of nominations for the office of District Director. Plaintiff alleges also that he was nominated during various meetinge by various locals of District 20 for the office of District Director. But says plaintiff, as permitted by the constitution of the Steelworkers, at the meetings of th locals, his name was placed in nomination and then according to the evidence, an immediate viva voce vote was taken by the members present and, although plaintiff was defeated, he claims, nevertheless, that under the procedure he is still a nominee of the respective locals and should have been placed on the District ballot. At the trial the parties stipulated that:

" * * * in United Steelworkers District 20, which contains 35 local unions, Plaintiff's name was placed in nomination at nomination meetings of six locals, Nos. 1211, 1082, 1268, 1212, 1261 and 3461, that at none of these was there any separate meetings for the voting on the choice of the Local's nominee, and that in four of the six Locals there was no secret ballot on the choice of the nominee. In addition, Plaintiff produced testimony that at a nomina-

tion meeting of a seventh Local Union, No. 1236, Plaintiff's name was placed in nomination, and that there was no separate meeting for choice of nominee and no secret ballot. * * * "

It seems to this court that the issue is squarely raised in this case as to whether the absence of any provision in the Steelworkers' constitution governing the conduct of the nomination and election procedures for International officers renders the Steelworkers' constitution incompatible with the Labor-Management Reporting and Disclosure Act of 1959. Defendants' counsel concedes that the constitution does not contain any detailed provisions governing this subject. They also concede that there is no uniform procedure among the local unions on this subject. Counsel even goes further and says that the provisions of the local union's constitution and by-laws relating to nominations and elections of local union officers and the governing provisions of Article VII, Section 8, of the Steelworkers' constitution on the subject are not by their terms applicable to the nomination of International officers. The result, says defendants' counsel, is that each local union conducts its nomination meeting in conformity with its own practices, subject only to the notice requirements and procedures set forth in Article V, Sections 4 and 5 of the Steelworkers' constitution and instructions sent out by the International Secretary-Treasurer. In this case those instructions were sent out November 10, 1960.

Defendants contend that the statute does not provide or require that nominations be made by secret ballot and that therefore the procedure adopted by the locals, specifically Local 1211, in the nomination of a candidate for District Director and his subsequent election on February 14, 1961, were valid under the statute and under the constitution of the Steelworkers and the by-laws of Local 1211. I have concluded to the contrary.

The Bill of Rights section of the Statute, 29 U.S.C.A. § 411, Section 101 of the Landrum-Griffin Act in part provides:

"(a) (1) Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws. * * * "

It is plaintiff's rights under that particular section which the court believes have been violated. It is further concluded that the constitution of the Steelworkers is lacking and deficient in failing to set forth nominating procedures for its International officers in order that members' rights under Section 101 will be protected.

The crux of the incompatibility of the Steelworkers' constitution with the statute is found in Sections 4 and 5 of Article V entitled "Nominations and Elections of International Officers, * * * ". The first sentence in Section 4 says that a local union shall have the right to nominate a member for each office to be filled. Section 5 says no person shall be a candidate who has not been nominated by 40 or more locals but in the case of candidate for District Director, nominations by 5 locals shall be sufficient.

The rules then direct a local union to choose from among its members but one person to be its nominee for International office. In reality then, in electing International officers, two elections are held. The first election is by the local union for its nominee for International office. When those selections are made by the various local unions and the name forwarded to the International office, then Sections 6 through 12 inclusive, very carefully and precisely lay down the rules for the conduct of elections by each member of each local union for the International office by secret ballot. Defendants'

counsel says that when a local union makes its choice of a nominee for the District ballot, that is merely a nomination. I disagree.

Local 1211 furnishes a good example of the deficient procedures and what happened there on December 1, 1960, happened in many of the other locals with regard to the election under discussion. Local 1211 had over 11,000 qualified members. The International constitution directed and local members were given at least one week's notice of a nomination meeting. This notice was however a posted notice at the union hall. Under the evidence the practice is in all the locals of District 20 to call a nomination meeting for a set time and place in the regular union hall. At the meeting of December 1, 1960, complained of by the plaintiff, the local union hall does not seat over five to six hundred of a total membership in excess of 11,000. The selection of the Local 1211 nominee is done at one meeting. Some 300 members were present in the union hall at the time of the meeting. The plaintiff and the incumbent nominee were nominated at the meeting. An immediate vote was taken at which the incumbent was the victor. During the hours set for the meeting one-third of the membership was at work and unable to attend. But in any event no more than 600 could have attended as that was the limit of the union hall's capacity.

Under the Bill of Rights, Section 101, each member is entitled to equal rights and privileges to nominate candidates, vote in elections, attend membership meetings and to participate in deliberations in voting upon the business at such meetings subject to reasonable rules and regulations. In the election section of the statute, Sub-Chapter V (29 U.S.C.A. § 481(e)),

" * * * a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office * * *."

It is noticed that the foregoing is merely a reiteration of what each member is assured in the Bill of Rights section.

It is to be noticed that under Local 1211 by-laws, in choosing their own local officers, the members proceed much differently than in choosing International officers. With respect to the nomination and election of Local 1211 officers, the steps set up in its by-laws are:

1. The nomination by petition requiring a minimum of 25 signatures.

2. The list of nominees is posted in the local union office at least 8 days prior to election.

3. The Financial Secretary prepares an official ballot showing the nominees names after they have drawn for position on the ballot.

4. The election is then held by secret ballot over a 2 day period between the hours of 6:00 A.M. and 8:00 P.M.; The ballot box is situate in the union hall; the ballots are marked by each voting member and deposited in the ballot box prepared for that purpose.

Thus under Local 1211 procedure every one of the 11,000 members has a chance to participate in the nomination and vote in the election. The rules of Local 1211 on this subject appear to be reasonable rules and regulations and permitted under the statute.

A mere glance at the constitution of the Steelworkers as compared with our Local 1211 shows that there is a hiatus in the nomination procedures adopted and used in the instant election which the defendants nevertheless maintain are valid. The fact is and the evidence shows that paid staff members from the International headquarters appear at the union meetings when International officers are nominated and direct that the procedure be conducted under the Steelworkers' constitution. That procedure however as has been demonstrated is deficient as it provides no method nor manner in which all members may participate in the nomination and selection of the union's candidate for District Director.

■ In connection with this phase of the case, the defendants rely upon a letter from the Secretary of Labor's office to the International, Exhibit G, but that letter did not pass on the proposition at issue as the facts were not shown as to whether actually every member had a reasonable opportunity to participate in nominating International officers. The letter indicated that the Landrum-Griffin Act does not require a secret ballot in nominations. I agree. I believe it will be found that nowhere in deliberative assemblies, under any rules of order, are nominations as generally known and understood, to be made by secret ballot. In practice and generally, a nomination need not even be seconded. See Roberts Rules of Order, Section 66, page 263. The question might be asked, what shall the procedure be under the circumstances shown by these facts? I think the answer is simple. The plaintiff would have no complaint whatsoever had the constitution of the Steelworkers directed that in nominating and choosing the Local 1211 candidate for District Director, it follow the procedure set forth in its by-laws for the nomination and election of local officers. The Steelworkers' constitution not providing any specific method and not directing that the local follow its own rules on the subject, there is a want of any orderly procedure whatsoever. The result is that each and every member's rights guaranteed him in the statute go unprotected under the Steelworkers' constitution and procedure.

Such a system, if it prevails, is contrary to every known requirement of free elections in political life. It is noticed that the evidence is that at each one of the meetings a member of the International staff was present, overseeing the nomination process. The system adopted and used permits the domination of a small meeting by the incumbents in office. The result of the District 20 election establishes the point just made. According to the Steelworkers' report of the election held February 14, 1961, the 50,000 members in District 20 divided into 35 locals voted on but one candidate and that was the incumbent. The office pays $16,000 per year. It seems highly improbable that in a secret ballot subsequent to a nomination meeting every single one of the 35 locals of District 20 would choose the same candidate to go on the District ballot. The system used fosters and promotes domination by incumbent officers. The eligible voters may cast secret ballots at the election but such right is useless when there is only one candidate to vote for on the ballot.

■■ And finally, the point is raised by the defendants that this is a complaint as to an election and that therefore the matter is governed by Sub-Chapter 5, Section 401 relating to elections which does not permit a suit by a member in the first instance. Under the election procedure the Secretary of Labor brings the action if he finds a violation of the statute in the election procedures. This court however takes the position that this case is fundamental to all the members of the Steelworkers. It is believed that Sub-Chapter 5 relates to the complaint as to any particular procedure in any specified election. The issue raised here however goes to the heart of the constitution of the Steelworkers. This court concludes that a plaintiff's fundamental rights under Section 101 have been violated and were violated as of December 1, 1960, in that under the Steelworkers' constitution there was no effective way for plaintiff to exercise an equal right and privilege within such organization to nominate or be nominated a candidate for District Director; and further that the United Steel Workers has no reasonable rules and regulations in its constitution setting up nominating and election procedures with regard to International officers.

The decisions of other District Courts cited by defendants are not in this court's opinion decisive of the issue raised here. I have read those decisions and have made no quarrel with them but believe they have no applicability to the facts presented before me. An appropriate order will be entered.